## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CLARK E. HARMON,**

      **Plaintiff,**

**v.**

**PRINCIPAL LIFE INSURANCE
COMPANY, et al.,**

      **Defendants.**

**Case No. 2:15-CV-2223**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion to dismiss (ECF No. 8), Plaintiff's response in opposition (ECF No. 17), and Defendants' reply memorandum (ECF No. 20).  For the reasons that follow, the Court **GRANTS** the motion.

### I.     BACKGROUND

The facts set forth below are taken from Plaintiff's complaint and are assumed true for purposes of this Opinion and Order.  Plaintiff Clark Harmon had a fifty-year career selling insurance products.  Between the early 1990s and July of 2010, Plaintiff was a broker and career agent for Defendant, Principal Life Insurance Company ("Principal").  Principal sells life insurance and other financial products to the public throughout the United States.

Also during this time, Plaintiff sold securities for Defendant Princor Financial Services Corporation ("Princor").  Through Princor, Plaintiff was registered with the Financial Industry Regulatory Agency ("FINRA").  Princor controlled Plaintiff's FINRA registration, which was a necessary prerequisite for Plaintiff to legally sell securities.

On December 1, 1999, Paul Sutor (an authorized agent of Principal) requested that Plaintiff alter his contract with Principal and change his title from "broker" to "career agent."

Plaintiff signed a Career Agents contract (the "Contract") to that effect on December 1, 1999.

The Contract is attached to the complaint at Exhibit A.  Several provisions of the Contract are

relevant to this Opinion and Order.

First, the Contract contains sections titled "Commissions While Under Contract" and

"Commissions After Termination."  (*Id*. at PAGEID # 84.)  The Contract then states:

> This contract, including the relevant commission schedule(s), represents the entire
> contract between you and us.  No promise, agreement, understanding or
> representation will be binding on us unless it is made in this contract, or by a
> written instrument signed by you and a vice president or higher officer level of the
> Company except as provided herein.

(*Id*. at PAGEID # 82.)  Regarding prior agreements, the Contract states: "Any prior or existing

contracts, whether oral or written, and any such amendments that you have with us are

terminated as of the date immediately before the effective date of this contract."  (*Id*. at PAGEID

# 84.)

The Contract contains an at-will employment provision.  That is: "We or you can

terminate this contract at any time for any reason."  (*Id*. at PAGEID # 82.)  Finally, the Contract

states: "This contract will terminate immediately in the event of expiration, cancellation or

revocation of your license to sell insurance or your death."  (*Id*.)

At the time he signed the Contract, Sutor represented to Plaintiff that "the rates on

renewal commissions and vesting schedules by which [Plaintiff] would be paid for sales on

behalf of Principal would not in any way be altered."  (ECF No. 2 ¶ 9.)  Plaintiff alleges that

Prinicpal "refused to honor the contractual commitment made by Paul Sutor."  (*Id*. ¶ 10.)

Plaintiff does not, however, allege that Sutor's statement was made "by a written instrument

signed by you and a vice president or higher officer level" so as to bring it within the gambit of

2

the Contract's modification provision.  Plaintiff similarly does not allege that Principal breached the Contract itself.

At some point after Plaintiff became a career agent, his relationship with Principal and Princor soured.  Princor "unilaterally and without just cause canceled [Plaintiff's] FINRA registration."  (*Id*. ¶ 12.)  Principal simultaneously "canceled the state variable appointments of [Plaintiff] which resulted in [Plaintiff] being unable to service or sell life insurance or security products to existing or future customers."  (*Id*. ¶ 13.)

Plaintiff filed this lawsuit on April 23, 2015.  His complaint contains three specific claims for relief: "First Claim: Breach of Covenant of Good Faith and Fair Dealing," "Second Claim: International Interference with Business Relations," and "Third Claim: Claim for Accounting of Renewal Commissions Due on Universal Life Policies."  (ECF No. 2 at PAGEID # 74–76.)  Defendants move to dismiss these claims.  The Court will consider the parties' arguments below.

## II.     ANALYSIS

### A.  Standard of Review

Dismissal pursuant to Rule 12(b)(6) is proper if the complaint fails to state a claim upon which the Court can grant relief.  Fed. R. Civ. P. 12(b)(6).  A court analyzing a Rule 12(b)(6) motion to dismiss may consider the complaint, public records, and documents central to the claim that are referenced in the complaint.  *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The court must construe the pleading in favor of the party asserting the claim, accept the factual allegations contained therein as true, and determine whether those factual allegations present a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

To be considered plausible, a claim must be more than merely conceivable. *Id.* at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "Factual content" requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In other words, a court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court is mindful that filings are to be construed by their substantive content and not by their labels. *See, e.g., Prof. Investigating & Consulting Agency, Inc. v. Suzuki*, No. 2:11-cv-1025, 2014 WL 4181675, at *1 (S.D. Ohio Aug. 21, 2014). That said, however, a complaint must provide fair notice of the claims asserted and the grounds upon which they rest. *Bell Atl. Corp.*, 550 U.S. at 555.

### B. Count One: Breach of Covenant of Good Faith and Fair Dealing

Defendants argue that the Court should dismiss Count One because a breach of the covenant of good faith and fair dealing is not a standalone claim. Plaintiff concedes this point. Plaintiff argues that he intended to assert a breach of contract claim instead of a claim for breach of the covenant of good faith and fair dealing. Plaintiff states: "in this case it is alleged that Defendants' [sic] breached its [sic] contract with Plaintiff by continually refusing to pay Plaintiff renewal commission fees owed." (ECF No. 17, at PAGEID # 167.) Plaintiff adds: "The breach of the implied covenant of good faith and fair dealing arises because the agreement was not terminated by Defendant Princor for business reasons but rather maliciously and for retaliatory reasons." (*Id.*)

Plaintiff's arguments fail for several reasons.  First and most importantly, the allegations detailed in Plaintiff's self-titled "First Claim: Breach of Covenant of Good Faith and Fair Dealing" do not mention renewal commission fees owed.  This section of the complaint is devoted entirely to Plaintiff's allegations that Defendants terminated Plaintiff's FINRA registration, provided false information to FINRA, and cancelled Plaintiff's appointments thus resulting in the termination of Plaintiff's employment.  Even applying notice pleadings standards liberally, no fair reading of the complaint supports Plaintiff's belated argument that he is asserting a breach of contract claim for failure to pay renewal commission fees owed.  *Cf. Rockwood v. Shoen*, No. 2:15-cv-1134, 2015 WL 6774314, at *5 (S.D. Ohio Nov. 6, 2015) (dismissing a claim over the plaintiff's argument that the complaint was "inartfully drafted" but was intended to assert a different claim than its plain language suggests); *see also In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio July 19, 2012) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))).  Count One therefore does not provide fair notice of a breach of contract claim for failure to pay renewal commission fees owed.

Such a claim fails for additional reasons.  Even assuming, *arguendo*, that Count One provides fair notice of a breach of contract claim, any such claim appears to be based on Plaintiff's contention that Paul Sutor made certain representations about the commission schedules under the Contract, and that Principal "refused to honor the contractual commitment made by Paul Sutor."  But as stated above, the Complaint is devoid of any allegation that would allow the Court to infer that Sutor's representations became integrated into the Contract. Plaintiff alludes to a "contractual commitment" but does not directly allege that Principal

breached the Contract.  As such, both Defendants and the Court are left to speculate about the contract terms that Defendants are alleged to have breached and the grounds upon which any such breach of contract claim rests.  This fact further dooms Count One.

Plaintiff's argument that Principal's motivation in terminating the Contract is somehow relevant to a breach of contract claim is likewise without merit.  Given the fact that the Contract allowed either party to terminate it "at any time for any reason," Plaintiff's speculation about Principal's reasons for terminating the Contract is irrelevant and does not establish a breach of contract.  The fact that every contract in Ohio contains an underlying covenant of good faith and fair dealing does not alter this conclusion.  *See, e.g.,Padula v. Wagner*, 37 N.E.3d 799, 2015-Ohio-2374 (9th Dist.), at ¶ 53 (acknowledging that parties to a contract are "bound by standards of good faith and fair dealing" but stating that "there is no separate cause of action for violating a duty to act in good faith in the employment-at-will context" (quoting *Roberts v. Hagen*, 9th Dist. Medina No. 2845–M, 2000 WL 150766 (Feb. 9, 2000), *4).

Finally, it is entirely unclear to the Court how Plaintiff's allegation regarding his FINRA registration is relevant to a breach of contract claim.  Plaintiff does not identify any contract involving FINRA or any promise by Defendants to report certain information to FINRA.  This allegation therefore cannot form the basis of a breach of contract claim.

Put simply, Plaintiff attempts to conflate a breach of contract claim and a claim of bad faith in order to create a claim for relief where none exists.  General allegations that Defendants acted in bad faith are insufficient to establish a breach of contract.  The Court therefore **GRANTS** Defendants' motion to dismiss Count One.

C.  Count Two: Intentional Interference With Business Relations

Plaintiff asserts that Defendants intentionally interfered with the relationships between Plaintiff and his clients.  Defendants offer several reasons why this claim should be dismissed; however, the Court need not address those reasons because the claim is time barred.

A claim for tortious interference with business relations "generally occur[s] when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B–Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14 (1995).  "A claim for tortious interference is subject to the four-year statute of limitations set forth in [Ohio Revised Code §] 2305.09(D)." *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 183 Ohio App. 3d 40, 2009-Ohio-2665, at ¶ 41.  Defendants correctly state that "the limitations period for claims of tortious interference begins to run when the events giving rise to the claim occur." *Koury v. City of Canton*, 221 F. App'x 379, 386 (6th Cir. 2007).

Here, Plaintiff alleges that his employment with Defendants terminated on July 14, 2010. There is no indication that the claim "accrued" at any time other than that date.

Plaintiff did not file this action until April 23, 2015.  Plaintiff therefore failed to file this lawsuit within the four-year statute of limitations.

Plaintiff does not dispute that § 2305.09(D)'s four-year statute of limitations applies to this claim.  Instead, he argues that the claim is within the four-year statute of limitations because Defendants refuse to remove information from the public record that they reported to FINRA. Plaintiff asserts, without citing any authority, that each day that passes in which Defendants refuse to remove the offending information restarts the four-year statute of limitations.

7

This argument borders on frivolous.  Even assuming, *arguendo*, that Defendants' conduct in reporting information to FINRA could establish a claim for interference with Plaintiff's relationship with his clients (who are actually Defendants' clients), such a claim accrued over four years ago when Princor reported the information at issue to FINRA.  The four-year statute of limitations began to run at that time.

Plaintiff's claim, therefore, is time barred.  The Court **GRANTS** Defendants' motion to dismiss Count Two.

### D.  Counts Three and Four:  Equitable Accounting

In Counts Three and Four, Plaintiff requests an accounting of renewal commissions and service fees due on universal life policies.  Plaintiff asserts that Paul Sutor "represented in writing to [Plaintiff] that the renewal commission rate on all universal life products would remain at a rate of 2% per annum."  (ECF No. 2 ¶ 22.)  Plaintiff further asserts that Principal "intentionally refused and continued to refuse to pay Harmon 2% renewal commissions on the universal life products which he had written through Principal."  (*Id*. ¶ 23.)  Plaintiff makes the same allegations with respect to service fees.

Defendants move to dismiss these claims on several grounds.  First, Defendants argue that accounting claims cannot stand alone without an underlying claim for relief.  Second, Defendants argue that accounting claims are equitable in nature and are available only when the plaintiff can demonstrate that he or she has no adequate remedy at law.

Plaintiff concedes both of these points.  Plaintiff argues, however, that he intended to assert a breach of contract claim and needs an equitable accounting in furtherance of that claim.  Plaintiff argues that Principal contracted to pay Plaintiff a 2% commission but refused to pay him that commission.

Plaintiff's arguments on this point for the same reasons as those set forth above.  Plaintiff alleged that his relationship with Principal was contractual in nature.  He attached to his complaint a Contract that, "including the relevant commission schedule(s), represents the entire contract between [Plaintiff] and [Principal]."  (ECF No. 2 at PAGEID # 82.)  Although Plaintiff attempts to label comments made by Paul Sutor at the time Plaintiff signed the Contract as a binding "commitment," he alleges no facts that would allow the Court to conclude that any such comments became integrated into the Contract.  The Court need not accept Plaintiff's legal conclusion that such comments were a "contract" without any facts to support that conclusion. *See Twombly*, 550 U.S. at 555.

Plaintiff also attached to his complaint an email from Sutor dated March 13, 2002 (i.e., three years after Plaintiff signed the Contract) stating that "the renewal is correct on a UL – 2% renewals, 2% service for a total of 4%."  (*Id*. at PAGEID # 85.)  Presumably, this email forms the basis of Plaintiff's allegation that Principal agreed to pay 2% renewal commissions on universal life products.  But this email is not signed by Plaintiff and therefore is not within the scope of the Contract's integration clause.  *See id*. at PAGEID # 82.  The fact that this email is dated March 13, 2002 also raises questions about Plaintiff's allegation that Principal agreed to pay him 2% commissions in 1999.  Similar questions exists regarding Princor's relationship to this alleged "contractual commitment" and the basis of any breach of contract claim against Princor.  It also remains unclear why Plaintiff labeled this claim a "Claim for Accounting" if he intended to assert a breach of contract claim.

In summary, Count Three fails to provide fair notice of a breach of contract claim and the grounds upon which such a claim rests.  Both the Court and Defendants are left to speculate about the claim Plaintiff is pursuing and the facts underlying that claim.  Because Rule 8 requires

that claims be "plausible" and more than "merely conceivable," *Twombly*, 550 U.S. at 555, Defendants' motion to dismiss Count Three is well taken.  The Court accordingly **GRANTS** Defendants' motion to dismiss Count Three.

### III.    CONLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's complaint.  (ECF No. 8.)  The Clerk is **DIRECTED** to enter judgment accordingly and remove this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**